COMMONWEALTH vs. WILLIAM H. HUNT.

Middlesex.  September 15, 1981. — December 29, 1981.

Present: BROWN, DREBEN, & KASS, JJ.

*Constitutional Law*, Admissions and confessions, Waiver of constitutional
   rights.  *Waiver*.

A confession by the defendant in a criminal case was properly suppressed
   from evidence, where it was made following statements to the defend-
   ant by police officers to the effect that his wife, who was also in
   custody, would be released if he confessed to the charges against him
   and that otherwise she would be sent to jail.  [843-845]

INDICTMENTS found and returned in the Superior Court
Department on June 17, 1980.

A pretrial motion to suppress evidence was heard by *Fine*,
J.  An application for interlocutory appeal was allowed by
*Kaplan*, J., in the Supreme Judicial Court for the county of
Suffolk, and the appeal was reported by him to the Appeals
Court.

*Peter W. Agnes, Jr.*, Assistant District Attorney, for the
Commonwealth.

*Robert J. Barker, II*, for the defendant.

DREBEN, J.  The Commonwealth, having obtained leave
to appeal from a single justice of the Supreme Judicial Court
(G. L. c. 278, § 28E, and Mass.R.Crim.P. 15[b][2], 378
Mass. 884 [1979]), claims error in the order of a judge of the
Superior Court which allowed the defendant's motion to
suppress a confession made by him while in police custody.[1]
We affirm.

---

[1] The defendant was charged with unlawfully carrying a firearm,
assault with a dangerous weapon, assault with intent to murder and
defacing the serial number of a firearm.

The following facts were found by the trial judge. In the early hours of February 17, 1980, a shooting occurred at "The Ranch," a bar in Marlborough. The victim was rendered unconscious and was taken to a hospital. A police report, based on conversations with a witness to the shooting, indicates that the victim's assailant fled the scene with a woman.

Various tips led Officer Bartlett of the Marlborough police department, the officer investigating the shooting, to the defendant's home. Bartlett and two other officers were allowed to enter. The defendant and his wife were given Miranda warnings. Both the defendant and his wife told the police that they had been at "The Ranch," but that they did not know anything about the shooting. Both were arrested. They were taken in separate cars to the police station where they were kept apart.

While at the police station, the defendant was questioned by Bartlett after having again been advised of his Miranda rights. He understood those rights. Bartlett took the defendant's photograph which he carried to the hospital with eight other pictures of males of similar appearance. The victim made a photographic identification of the defendant. Bartlett returned from the hospital and informed the defendant of the positive identification. The defendant expressed concern about his wife.

The judge found that:

> "Bartlett told the defendant that if he confessed to the shooting and said Mrs. Hunt was not involved she would be released. Otherwise, because the couple had come recently from Florida, high bail would be sought and Mrs. Hunt would probably be sent to Framingham. Mrs. Hunt had been detained in another room but at one point had been brought in to defendant in tears."[2]

---

[2] Officer Bartlett's testimony was more graphic: "I advised him that there is a good chance where they come from Florida that there would be

The defendant then made incriminating statements and led Bartlett to the firearm.

The judge ruled that at the time of the statements by the officer to the defendant concerning his wife, "Mrs. Hunt was being held with no evidence in the possession of police even approaching probable cause."[3] She concluded that the psychological pressure brought to bear on the defendant was such that the Commonwealth did not meet its "heavy burden" of establishing that the defendant's confession was voluntary. *Commonwealth v. Meehan*, 377 Mass. 552, 563 (1979).

The standard of review in these cases requires us to accept the subsidiary findings of fact of the trial judge absent clear error. *Commonwealth v. White*, 374 Mass. 132, 137 (1977), aff'd, 439 U.S. 280 (1978). *Commonwealth v. Moon*, 380 Mass. 751, 755-756 (1980). Also, the judge's ultimate legal conclusions as to the defendant's intelligent and voluntary waiver of Miranda rights, or the absence thereof, or as to the voluntariness of his statements are "entitled to substantial deference." *Commonwealth v. White*, 374 Mass. at 138. *Commonwealth v. Tabor*, 376 Mass. 811, 822 (1978). *Commonwealth v. Doyle, ante* 786, 795 n.3 (1981).

Using that standard of review, we should not interfere with the judge's conclusions in this case. See *Commonwealth v. Meehan*, 377 Mass. at 567-568. The judge heard

a bail, we would recommend a high bail because of no roots, and the seriousness of the crime, and that there is a good chance his wife might have to go to Framingham in lieu of bail. I says: If you are man enough, if you did it, if you are man enough to do it, then you are man enough not to let your wife go to jail, I think you should admit to it."

[3] This conclusion does not appear erroneous. There was nothing in the initial police report or any information received subsequent thereto by the police which indicated anything more than that a woman left the scene of the shooting with the defendant. Thus, at the time of the defendant's confession, the officers had no knowledge linking her to the shooting, and the only evidence against Mrs. Hunt was that she was present at a shooting and left with the defendant. See *Commonwealth v. Haas*, 373 Mass. 545, 555 (1977). See also G. L. c. 274, § 4.

See, in connection with making false statements to a defendant, *Commonwealth v. Meehan*, 377 Mass. 552, 563 (1979), and *Commonwealth v. Jackson*, 377 Mass. 319, 328 n.8 (1979).

testimony of the defendant, his wife and of police officers. On the evidence before her, the judge found an implicit threat or promise that the defendant's wife would be released if he confessed and did not implicate her; otherwise she would be sent to jail. Viewing the totality of the circumstances, the judge could conclude that the statements of the defendant were not his free and voluntary act. See *Rogers* v. *Richmond*, 365 U.S. 534, 536-537, 548 n.5 (1961); *United States* v. *Guaydacan*, 470 F.2d 1173, 1173-1174 (9th Cir. 1972). See also *United States* v. *McShane*, 462 F.2d 5, 7 (9th Cir. 1972), and a considerably more egregious case, *Ferguson* v. *Boyd*, 566 F.2d 873, 879 (4th Cir. 1977). Cf. *Commonwealth* v. *Meehan*, 377 Mass. at 564-565. For cases in other States, see *People* v. *Trout*, 54 Cal.2d 576, 583-584 (1960) (particularly the court's comment concerning the testimony of Lieutenant Murray at 583-584); *Hall* v. *State*, 255 Ind. 606, 610-611 (1971); *State* v. *Hilpipre*, 242 N.W.2d 306, 312 (Iowa 1976). See generally Annot., 80 A.L.R.2d 1428 (1961).[4]

We reject the Commonwealth's suggestion that a threat or promise concerning the defendant's wife, and not the defendant himself, is insufficient to invalidate a confession. See *State* v. *Gibilterra*, 342 Mo. 577, 586 (1938). See also dictum of Morton, J., in *Commonwealth* v. *Knapp*, 9 Pick. 496, 504 (1830). A concern for one's family may be as significant in inducing an involuntary confession as a concern

---

[4] The authorities relied on by the Commonwealth are, for the most part, distinguishable, as in those cases the fact finder did not find the existence of a threat or promise. This is not a case where the police, without making any promise to release the defendant's wife if he confessed, truthfully informed the defendant that his wife would be released if there appeared to be no evidence to hold her. *State* v. *Ferguson*, 119 Ariz. 55, 60 (1978). *People* v. *Abbott*, 156 Cal.App.2d 601, 605-606 (1958). See also *Commonwealth* v. *DiStasio*, 294 Mass. 273, 284-285 (1936), cert. denied, 302 U.S. 683 (1937). Nor is this a situation governed by the principle that "where no express or implied promise or threat is made by the police, a suspect's belief that his cooperation will benefit a relative will not invalidate an admission." *People* v. *Steger*, 16 Cal.3d 539, 550 (1976). *Jones* v. *State*, 229 Md. 165, 171-172 (1961).

for oneself. *People* v. *Mellis*, 134 Cal. App. 219, 225-226 (1933). See *Rogers* v. *Richmond*, 365 U.S. at 536-537, 548 n.5; *Lynumn* v. *Illinois*, 372 U.S. 528, 534 (1963). Cf. *Commonwealth* v. *DiStasio*, 294 Mass. 273, 284-285 (1936).

*Order affirmed.*