Jeffrey S. HEIRONIMUS, Appellant,

v.

STATE of Indiana, Appellee.

No. 82S00–8609–CR–836.

Supreme Court of Indiana.

Aug. 28, 1987.

Barry L. Standley, Beverly K. Harris, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in a conviction of appellant of Robbery, a Class B felony, and a further finding that he was an habitual offender. Appellant received an initial sentence of fifteen (15) years for the robbery, which was enhanced by twenty-seven (27) years by reason of his status as an habitual offender.

The facts are: On September 24, 1985, Adam Miller, James McDaniel and Susan West were working at an Osco Drug Store in Evansville, Indiana, when two men entered, one was carrying a sawed-off shotgun and announced "[d]on't anybody move. I don't wanna have to blow anybody away." The other man entered the pharmacy section and picked up two one-hundred-count bottles of Dilaudid. The two men then fled through the back door of the drugstore.

Subsequently, appellant contacted Evansville Police Officer Guy Minnis and said that he understood the officer was looking for him and wanted to talk with him. Officer Minnis informed appellant that there were no warrants out for him at the time but that he did want to talk with him about the drugstore robbery. Appellant called the officer at a later time and the robbery was again discussed. The officer told appellant that if he did not come in and discuss the robbery with him charges would be filed against him on the following Monday. At that point, appellant told the officer he might turn himself in.

He indicated to the officer, however, that he was worried about an habitual criminal charge and did not want such a charge filed against him. The officer informed appellant that he would try to do what he could to help him with the habitual criminal charge but that it would be up to the prosecutor to make that determination. At that time, appellant informed the officer that until he got some kind of understanding he was not going to meet the officer anywhere. That was the last Officer Minnis heard from appellant until he surrendered to the Jeffersonville Police Department.

Upon being advised by the Jeffersonville Police Department that appellant was in custody, Officer Minnis travelled from Evansville to Jeffersonville, picked up appellant and returned him to Evansville. Prior to leaving Jeffersonville, Officer Minnis advised appellant of his *Miranda* rights, then on the return trip to Evansville discussed the robbery with appellant. During the trip, appellant expressed concern about his wife and children. Officer Minnis informed him that his wife was in jail and his children were under the care of the Welfare

Department. This was a truthful reply to appellant's inquiry.

Appellant claims the trial court erred in overruling and denying his motion to suppress a statement taken from him by the Evansville Police Officers. He claims he gave the statement only because police officers promised that he would not be charged as an habitual offender if he gave the statement. He further claims that he was coerced into giving the statement in that the ride from Jeffersonville to Evansville was long, that he was tired and that the close proximity of the officers amounted to coercion. He claims this coercion was enhanced by the information that his wife was in jail and that his children were under the care of the Welfare Department.

■ He likens his situation to the case of *Hall v. State* (1971), 255 Ind. 606, 266 N.E.2d 16. However, in *Hall,* the appellant was threatened that if he did not confess the police officers would arrest his wife and place his children under the care of the Welfare Department. In the case at bar, no such threat was made. Appellant was merely factually advised as to the present location of his wife and children at the time he was taken into custody. No threats of any kind were made by police officers concerning appellant's wife or children.

■ Further we cannot agree with appellant that there was anything coercive concerning his conversations with the police officers returning to Evansville from Jeffersonville. Appellant had in fact voluntarily initiated telephone conversations with the police officers while he was still at large, indicating a willingness to turn himself in on the drugstore robbery if they would intercede and prevent the filing of an habitual criminal charge. It was following such overtures that he surrendered to the Jeffersonville Police Department. Thus, at the time the Evansville Police Department took appellant into custody to begin any type of questioning, the question was not so much as whether he was involved in the robbery, but what could be done to lessen his penalty.

■ As to the promise of Officer Minnis to intercede in appellant's behalf with the prosecuting attorney, such in fact was done. Officer Minnis attempted unsuccessfully to induce the prosecutor to withhold the habitual charge. We see nothing in this record to indicate the trial court erred in overruling the motion to suppress and in allowing appellant's confession in evidence.

■ Appellant claims the verdict is not supported by sufficient evidence. This claim is largely based upon the proposition that the confession should not have been allowed in evidence. The above-recited facts clearly indicate that a robbery did in fact take place. Although appellant argues that there was no proof of force, the evidence is clear that a robbery was perpetrated at the point of a sawed-off shotgun. This clearly complies with the statutory requirement that there be either force or threat of force. Ind.Code § 35–42–5–1(1). The fact that one of the robbers was armed and the other was not is of no moment. When confederates combine to commit an offense each is responsible for all acts committed in furtherance of their common design. *Hogan v. State* (1980), 274 Ind. 119, 409 N.E.2d 588. It was not necessary for the State to prove that appellant personally committed every act necessary to complete the robbery. *Howard v. State* (1978), 268 Ind. 589, 377 N.E.2d 628, *cert. denied*, 439 U.S. 1049, 99 S.Ct. 727, 58 L.Ed.2d 708.

■ Appellant claims there is no direct identification of him with the crime. The *corpus delecti* of the robbery was obviously established by the testimony of the robbery victims. The trier of fact was thoroughly justified in using appellant's confession in connection with the other evidence in the case to connect him with the crime. *See Hayden v. State* (1964), 245 Ind. 591, 199 N.E.2d 102, *reh'g. denied*, 245 Ind. 591, 201 N.E.2d 329. There is ample evidence in this record to support the verdict of the jury.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.